IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| PHYLLIS MOORE, ) | |
| ) | |
| Plaintiff, ) | Case No. 09 C 3452 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| CITY OF CHICAGO HEIGHTS, THE VILLAGE ) | |
| OF STEGER, PATROLE AGENT BRADLEY, ) | |
| JOHN DOE 1, and JOHN DOE 2, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Phyllis Moore ("Moore"), administrator of the estate of Teresa Iacovetti ("Iacovetti"), filed suit against the Defendants City of Chicago Heights ("Chicago Heights"), the Village of Steger ("Steger"), Parole Agent Bradley ("Bradley"), Unknown Law Enforcement Officer for the City of Chicago Heights Jon Doe 1 ("Doe 1"), and Unknown Law Enforcement Officer for the Village of Steger John Doe 2 ("Doe 2") pursuant to 42 U.S.C. §1983, alleging that Defendants violated Iacovetti's equal protection rights under the Fourteenth Amendment. Chicago Heights and Doe 1 now move to dismiss Moore's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants argue that the Complaint must be dismissed for three reasons: 1) Moore lacks standing and causation; 2) Moore failed to make prima facie allegations concerning similarly

1

situated individuals; and 3) Doe 1 is protected by qualified immunity. For the reasons stated below, the Court denies Chicago Heights' and Doe 1's Motion to Dismiss.[1]

## FACTUAL BACKGROUND

The following facts are taken from Moore's Complaint and are accepted as true for purposes of deciding this Motion to Dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). Iacovetti entered into a romantic relationship with her neighbor Alvin Perkins, an Illinois Department of Correction parolee, in 2006. Cmplt. ¶ 11. After the relationship ended, Perkins harassed and abused Iacovetti at her residence in the City of Chicago Heights and at her business in the Village of Steger. Cmplt. ¶¶ 11-13. Iacovetti repeatedly complained to both the Chicago Heights and the Steger police departments about this harassment. Cmplt. ¶¶ 12-13. On November 26, 2006, Iacovetti called 911 and informed the operator that Perkins was yelling that he was going to shoot her with a gun. Cmplt. ¶ 14. Chicago Heights police officers responded to the call and offered Iacovetti advice on how to file a complaint but did not arrest Perkins. Cmplt. ¶ 15.

On May 7, 2007, after several incidents of abuse and harassment that Iacovetti reported to the Chicago Heights police department, Iacovetti obtained an emergency protective order against Perkins requiring that he have no contact with her, including phone calls, in-person visits, and contact through third parties. Cmplt. ¶¶ 15-19. When Perkins violated this order of protection on May 11, 2007, Iacovetti sent a facsimile to Bradley, Perkins's parole agent, enclosing various police

---

[1]The Court notes that although Steger does not join in this Motion to Dismiss, Moore's allegations against it are less particularized, alleging only that Iacovetti frequently complained to the Steger police department at the end of Iacovetti's and Perkins' relationship, and neither took any action to stop Perkins' harassment and abuse. (R. 1 at ¶¶ 13, 24.) For that reason, Moore's claim against Steger might not survive a Motion to Dismiss under the standard set forth in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009). *See id.* at 1949 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief,''" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

2

reports and the order of protection. Cmplt. ¶ 21. Iacovetti advised Bradley of Perkins's persistent abuse and harassment, including threats to kill her, and stated that she was scared for both her own life and the life of her son. Cmplt. ¶ 21. Perkins' parole was not revoked. Cmplt. ¶ 22. On July 21, 2007, Perkins came to Iacovetti's home, struck her, and then shot her in the head. Cmplt. ¶ 26. Iacovetti ultimately died from these injuries on July 4, 2007. Cmplt. ¶ 26.

Moore's Complaint alleges that Defendants are liable for Iacovetti's death because they engaged in a policy, pattern and practice of treating domestic abuse reports from women with less priority than other crimes. Cmplt. ¶ 29. As a direct and proximate result of Defendants' actions and omissions, Moore claims, Iacovetti suffered physical pain and suffering, mental anguish, severe emotional distress and death in violation of the equal protection clause of the Fourteenth Amendment. Cmplt. ¶¶ 30-31.

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *See id.* at 1950. A claim has facial plausibility

when the factual content in the pleadings allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See id.* at 1949.

**DISCUSSION**

1. **Standing and Causation**

Chicago Heights and Doe 1 first assert that Moore's Complaint should be dismissed for lack of standing and lack of causation.[2] Moore lacks standing to bring a § 1983 equal protection claim, they maintain, because a private individual has no federal right to the prosecution of another. Chicago Heights and Doe 1 are correct that a plaintiff has no standing to seek the federal prosecution of another. *See Linda R.S. v. Richard D.*, 410 U.S. 614, U.S. 614, 619 (1973). However, Doe 1 and Chicago Heights misunderstand Moore's Complaint, which alleges a violation of the Equal Protection Clause. Although "[g]enerally, there is no constitutional right, either in the due process clause or the equal protection clause, to be protected against being attacked or raped by a member of the general public," *Lowers v. City of Streator*, 627 F. Supp. 244, 246 (N.D. Ill. 1985), an exception arises where the state "selectively den[ies] its protective services to certain disfavored

---

[2] Chicago Heights and Doe 1 also raise an initial argument that they cannot be liable under the Illinois Domestic Violence Act of 1986, 750 ILCS 60/103, because they complied with the Act. As the Chicago Heights and Doe 1 appear to recognize in their reply brief, this argument misconstrues Moore's Complaint. Moore states a claim for a federal constitutional violation of Iacovetti's equal protection rights. Moore's Complaint refers to the Illinois Domestic Violence Act to show that the there are acts in place requiring certain types of responses to domestic violence. Because Moore alleges a violation of federal constitutional law under § 1983, the Illinois Tort Immunity Act does not, as Defendants claim, shield their conduct. *See Martinez v. California*, 444 U.S. 277, 284 n. 8 (1980) ("Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985 cannot be immunized by state law"). Chicago Heights and Doe 1 also attach several police reports to support their argument that they were in compliance with the Illinois Domestic Violence Act. Outside evidence generally may not be considered when reviewing a motion to dismiss, *see* FED. R. CIV. P. 12(b), unless it is referred to in the Complaint and central to the claim, *see Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). The police reports attached by Chicago Heights and Doe 1 are not sufficiently central to the claim for the Court to consider them in its review of this motion to dismiss. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (although it is appropriate to include, for example, a copy of the contract in a contract interpretation case, the exception "is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment").

4

minorities" in "violat[ion of] the equal protection clause." *DeShaney v. Winnebago County Dept. of Soc. Servs.,* 489 U.S. 189, 197 (1989); *see also Nabozny v. Podlesny*, 92 F.3d 446, 456 n. 7 (7th Cir. 1996) (explaining that "the Court's reasoning in *DeShaney* is inapplicable to Nabonzy's equal protection arguments. As the Court noted in *DeShaney*, 'the State may not, of course, selectively deny its protection services to certain disfavored minorities without violating the Equal Protection Clause'"). Here, Moore's Complaint alleges that Defendants engaged in a policy, pattern and practice of treating domestic abuse reports from women with less priority than other crimes, and that as a result of that policy, Iacovetti suffered harm. Moore's claim is not for the federal prosecution of Perkins, where cases like *Linda R.S.* might apply to deny her standing, but for an equal protection violation where she does have standing. *See, e.g.*, *Didzekeris v. Brewer*, 41 F. Supp. 2d 840, 847 (N.D. Ill. 1999) (plaintiff had a cognizable equal protection clause claim against the City for failing to protect her against domestic violence, in part because a "number of other courts have found potential equal protection violations where police fail to adequately respond to domestic violence complaints lodged by women").

Chicago Heights and Doe 1 similarly argue that Moore fails to establish a causal link between the failure to arrest Perkins and the murder of Iacovetti six weeks later. Although Chicago Heights and Doe 1 are correct that a plaintiff must plead causation as an element of a § 1983 cause of action, *see Muckway v. Craft*, 789 F.2d 517, 521 (7th Cir. 1986), Moore's Complaint alleges that as a direct and proximate result of the Chicago Heights' policy, Iacovetti suffered harm in the form of physical pain and suffering, mental anguish, severe emotional distress and ultimately death. *Compare, e.g.*, *Christian v. Village of Maywood*, 656 F. Supp. 367, 369 (N.D. Ill. 1987) (dismissing a case where "plaintiffs still have not *pled* that the unlawful conduct of which they complain, namely

5

nonenforcement of the code against others, caused their own injury") (emphasis added). Chicago Heights and Doe 1 cite no cases holding that a six-week time interval between a failure to arrest or revoke parole and a murder is too remote to show causation. Moreover, Moore supports her causation claim by alleging that Iacovetti notified Chicago Heights Parole Agent Bradley that Perkins had violated his parole and that she feared for her life and for her son's safety. Given that "in the normal course, the issue of causation is one for the jury," *Shepard v. State Auto. Mut. Ins. Co.*, 463 F.3d 742, 748 (7th Cir. 2006), the Court finds that Moore has sufficiently pled causation for purposes of surviving this motion to dismiss.

2. **Adequacy of Pleading Equal Protection Cause of Action**

Chicago Heights and Doe 1 next claim that Moore has failed to sufficiently plead a violation of the equal protection clause. The Federal Rules of Civil Procedure provide that to state a claim for relief, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Section 1983 claims are not subject to a heightened pleading standard. *Leatherman v. Tarrant County Narcotics Unit*, 507 U.S. 163, 164 (1993); *Payton v. Rush-Presbyterian*, 184 F.3d 623, 627 (7th Cir. 1999). To make out a prima facie case for an equal protection violation, a plaintiff must allege that: 1) she is a member of a protected class; 2) she was otherwise similarly situated to members of the protected class; and 3) she was treated differently from members of the unprotected class. *See Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005). "A plaintiff need not 'show' anything to survive a motion to dismiss under Rule 12(b)(6)—he need only allege." *Id.*

Chicago Heights argues that more particularized allegations are necessary and that more facts showing that Iacovetti "was treated differently from similarly situated individuals" are necessary.

(*See* R. 27 at p. 4.) As an initial matter, Moore need not show that Iacovetti was treated differently from similarly situated individuals; rather, that she was treated differently from "members of the unprotected class." *See Brown*, 398 F.3d at 916. Furthermore, Moore's Complaint alleges that Chicago Heights "engaged in a policy, pattern and practice of treating domestic abuse reports from women with less priority than other crimes," which "resulted in unequal and discriminatory treatment in the form of inadequate or no protection for victims of domestic abuse seeking police intervention." (R. 1 at ¶ 29.) A plaintiff may successfully state a claim under the Equal Protection Clause by alleging that the state has "discriminate[d] in providing protection to members of the public." *See Lowers*, 627 F. Supp. at 246. Like the plaintiff in *Lowers*, who successfully stated a claim under § 1983 and the equal protection clause by alleging that "defendants' failure to arrest a rapist and to continue the investigation was a result of her being a woman," *see id.*, Moore's Complaint alleges that she was treated differently because she was among the class of "domestic violence assault victims," which consists primarily of the protected class of women. (R. 1 at ¶ 29.) "[I]t is not until a motion for summary judgment that the court will require evidence to support this equal protection claim," and for now the Court finds it sufficient that "upon discovery, a number of facts may be discovered which, collectively, would be sufficient to prove that the City authorized a discriminatory practice." *See Didzerekis*, 41 F. Supp. 2d at 847. For these reasons, the Court finds Moore's allegations sufficient to state an equal protection claim against Chicago Heights under Federal Rule of Civil Procedure 8(a).[3]

---

[3] Moore's Response Brief raises the argument that the "the duty to protect Iacovetti and the right she had to be protected from further attacks by Perkins arises in part from the 'special relationship' central to *Lowers v. City of Streator*, 627 F. Supp. 244 (N.D. Ill. 1985)." (R. 33 at p. 3.) However, the State's duty to protect an individual with whom it has a special relationship arises under the due process clause. *See Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998). Moore's Complaint alleges only that Defendants violated Iacovetti's equal protection rights.

3. **Qualified Immunity**

Finally, Doe 1 asserts that he should be dismissed from this action because he is protected by qualified immunity. The defense of qualified immunity protects state or municipal officials when sued under § 1983 in their individual capacity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Although qualified immunity may properly be resolved through a motion to dismiss, *see Harrell v. Cook*, 169 F.3d 428, 433 (7th Cir. 1999), it is also "almost always a bad ground for dismissal and is better addressed at summary judgment," *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000). Under the doctrine of qualified immunity, officials performing discretionary functions are generally shielded from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow*, 457 U.S. at 818; *see also Nabozny*, 92 F.3d at 455. If the law in a certain area was not "clearly established" at the time the official acted, the official is not liable because "an official could not reasonably be expected to anticipate subsequent legal developments, nor could be said to know that the law forbade conduct not previously identified as unlawful." *See Harlow*, 457 U.S. at 818. The critical question in this case, therefore, is whether the law clearly established the basis for Moore's equal protection claim at the time of Iacovetti's abuse and eventual death.

This Court finds that the Moore has pled sufficient facts tending to show a violation of clearly established law so as to survive Doe 1's Motion to Dismiss on qualified immunity grounds. Although Doe 1 points to the lack of a Seventh Circuit case squarely on point, liability under the doctrine of qualified immunity "is not predicated upon the existence of a prior case that is directly on point." *Nabozny*, 92 F.3d at 456 (citing *McDonald v. Haskins*, 966 F.2d 292, 293 (7th Cir. 1992)). Instead, the question is whether a reasonable state actor would have known that his actions,

8

viewed in the light of the law at the time, were unlawful. *Id*. Although the Seventh Circuit has yet to find a violation of the equal protection clause where police officers failed to adequately respond to domestic violence complaints, *see Didzerekis*, 41 F. Supp. 2d at 847, it has repeatedly held that "[d]iscrimination in providing protection against private violence could of course violate the equal protection clause." *Bowers*, 686 F.2d at 618; *Nabozny*, 92 F.3d at 456 n. 7 (noting that plaintiffs may raise claims under the equal protection clause when the state has selectively denied protective services to certain minorities); *see also DeShaney*, 489 U.S. at 197 ("The state may not [] selectively deny its protective services to certain disfavored minorities without violating the equal protection clause."). As early as 1999, a court in this district noted that a "number of other courts have found potential equal protection violations where police fail to adequately respond to domestic violence complaints lodged by women." *See Didzekeris*, 41 F. Supp. 2d 840 at 847 (N.D. Ill. 1999). At the time of the alleged violent incidents and abuse, therefore, it was clearly established that discrimination in providing protection against private violence for a certain class of crimes could violate the equal protection clause of the Fourteenth Amendment. As explained above, viewing the allegations in the light most favorable to Moore, she has sufficiently pled a violation of the equal protection clause. As such, the Court denies Doe 1's Motion to Dismiss on qualified immunity grounds.

**CONCLUSION**

For the reasons stated, the Court denies Chicago Heights' and Doe 1's Motion to Dismiss.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

9

Date: January 12, 2010